# Sage *against* M'Guire.

To enforce the specific performance of the parol contract of a decedent for the sale of land, it is indispensable that the precise terms and nature of it be clearly and distinctly proved: that the vendee had taken the exclusive possession of the land sold in pursuance of the contract and in the lifetime of the vendor.

APPEAL from the decree of the District Court of *Venango* county.

The petition of John G. M'Guire for leave to prove a parol contract, &c., set forth that Jonathan R. Sage on or about the 31st January 1839, was seised of and in a certain in-lot in Franklin, No. 571, on which were erected a small frame dwelling-house and frame stable. That being so seised, did by parol agreement contract for the sale thereof to the petitioner for the sum of $300, to be paid to Sage. That the petitioner paid to Sage in his lifetime the sum of $79, part of the purchase money; and by direction of Sage a deed was prepared, but not executed in consequence of the death of Sage. That by virtue of said contract, the petitioner had taken possession of the premises and made considerable improvements thereon, and was ready and willing to pay the consideration money, but that no sufficient provision was made by Sage for the performance of the contract, &c.: the petitioner prayed the court to receive proof, &c.

On the petition being presented, the court appointed a commission to take the testimony of witnesses. Several witnesses were examined, some of whom proved the facts as set out in the petition as they understood them from M'Guire in his lifetime; others proved that the consideration was above $400; and others that the sale was a conditional one, without stating what the condition was. The weight of testimony seemed to sustain the facts alleged in the petition, except that it was clearly proved that no possession was delivered to M'Guire in the lifetime of Sage; but on the contrary, he obtained possession from a tenant after Sage's death, and against the consent of the widow and heirs. The court below decreed specific execution of the contract.

*Pearson* and *Snowden,* for appellant. There are two fatal objections to the decree of the court below. 1. The contract is uncertain; the witnesses differ about what was to be the consideration, and there is no proof at all as to when that consideration was to be paid, or when the possession was to be delivered. 2. The possession was not delivered in the lifetime of the vendor. This is clearly not a case in which equity would decree spe-

[Sage v. M'Guire.]

cific performance. 1 *Watts & Serg.* 83; 1 *Mad. Chan.* 376; 9 *Watts* 32; 10 *Watts* 204; 6 *Whart.* 153; 3 *Serg. & Rawle* 545; 2 *Serg. & Rawle* 355.

*Derrickson, contra.* This, like all other cases, must be decided upon the weight of evidence. From the testimony of all the witnesses it cannot be doubted what the contract was; and because one or two witnesses understood it differently, is not a good reason why the court should not give effect to the whole taken together. The contract was undoubtedly made and the vendee paid part of the consideration and went into possession, on the termination of the tenant's lease, and adopts this remedy to get his title, when he is opposed by those whose object is to turn him round to an insolvent estate to recover his money back and cause him to lose his improvements made upon the house.

The opinion of the Court was delivered by

Rogers, J.—Before a Court of Chancery will undertake to enforce the specific performance of a parol contract, it is indispensable to prove, by the most clear and indisputable evidence, the precise terms and nature of the agreement; and in addition, that the vendee has taken the exclusive possession of the land sold, in consequence of and in pursuance of the contract. Also, to enforce it against the heirs, it is indispensable that the possession be delivered in the lifetime of the vendor. For, I know of no case where an imperfect contract which wants the essential ingredient of a part performance before the vendor's death, has been enforced after the right of the heirs has attached. In all such cases, the vendee must be left to his remedy at law, and cannot invoke the aid of a Court of Chancery. If this be so, then anything which has been done since his death, even with the assent of the personal representatives, cannot aid the vendee. These principles must govern in proceedings under the Act of the 24th of February 1834. The petition is for specific performance of a parol contract, and the question is, whether the proof is sufficient to entitle the petitioner to a decree; and this is the difficulty here, for it seems to me the proof is deficient in two particulars; first, as to the terms of the contract; and secondly, the evidence of a part performance. It is held in several cases that the terms of the contract must be precisely proved, and cannot be left to doubtful inference or vague conjecture. Now, whether the property was sold for $300 or $400, whether it was an absolute or conditional sale, or a mortgage, is not altogether clear. All the evidence we have is of declarations of the deceased vendor—in its nature, to make the best of it, very unsatisfactory proof. One of the witnesses asked the vendor what he was to get for the house. He told him, he thinks, something rising $400. Two or three witnesses prove they heard him say he sold it for $300. Another understood him that he sold on condi-

IV.— U

tions, but he did not understand what the conditions were. The only thing that is absolutely certain is, that there was an arrangement between them of some kind; that the vendee was to pay some debts for which the vendor was liable; but what was the precise nature of the arrangements in all its parts nowhere appears. The proof was clearly defective, for it has been once held that specific performance of a parol agreement for the sale of an estate, proved by one witness, confirmed by part performance by taking possession, and acts of ownership, was refused, there being some inconsistency in the testimony of the witness, which, with other circumstances, placed the terms of the contract in doubt. 1 *Young* 346. A Court of Chancery does not undertake to weigh the testimony as may be done by a jury; but if there be a reasonable doubt about the terms of the agreement, the court will refuse their aid. But was there a part performance of the contract in the lifetime of the vendor? It must be recollected that the petitioner must show clearly that it is a case in which he has a right to a specific performance, and that this can only be done by proof that the vendee took possession of the premises in the lifetime of the vendor, in consequence of and in pursuance of the agreement. Now the evidence, instead of proving that possession was taken as is required, shows conclusively that it was not taken until some time after the death of the vendor, and then without the consent of the widow and heirs; nay more, without even the consent of the administrators, although their consent, in our view of the case, would not help the vendee. We, therefore, discard from the case all proof of possession since taken, or the improvements he may have thought proper to make on the property. It was of his own wrong, and cannot therefore strengthen his title; and it is nothing to the purpose that he may be thrown for his remedy on an estate of doubtful solvency, for it is his own folly.

But it is said, that since the Act of the 24th of February 1834, the court may decree specific performance of a parol contract for land without proof of part performance. This is a startling proposition, and in truth amounts to a repeal of the Act of Frauds in case of the death of the vendor. I cannot but believe that when the legislature intend to make so important a change in the law, they will not fail to express themselves in clear, explicit, and unambiguous language. It will not be left to doubtful inference and vague conjecture. The argument is based on the expression "seised and possessed." In the 15th section of the Act of the 24th of February 1834, the Orphans' Court have power to decree the performance of a written contract of a decedent for the sale of real estate upon the application of the executor, administrator, or any party in interest, where the deceased *dies seised or possessed* of such real estate. This is the language of the Act. And by the 16th section the like proceedings may be had in all respects

[Sage v. M'Guire.]

wherever any parol contract shall have been entered into by any decedent for the conveyance of real estate within this Commonwealth, of which such decedent shall die *seised and possessed,* when no sufficient provision for performance thereof shall have been made by the decedent, *in all cases where such parol contract shall have been so far executed that it would be against equity to rescind the same.* The latter clause evinces very clearly that dying, in possession of itself was not all that was required; but they are to decree performance only where the parol contract has been so far executed that it would be against equity to rescind the same. But the question recurs, when must it be executed? Why doubtless in the lifetime of the vendor; and what equity is meant but the equity which has been established by a long train of judicial decisions? It is against common reason, and would be of the most mischievous consequences, to give the Act any other construction. But again, what do the legislature intend by the use of the words " dying seised and possessed?" Could they mean that where a person was seised of the legal title, and in possession and dies, the court, on proof of a parol agreement alone, may decree performance? This, we have shown, could not have been the intention. They doubtless intended to extend the remedy to those cases only where the testator or intestate had a title, and was in actual possession, not where he had a claim to the title, or what is termed in law a right to the possession, which may reside in one man, while the actual possession is not in himself, but another. And this accords with the remarks of the commissioners on the civil code. " The provisions, (speaking of the Acts relative to the proof of decedent's contract), are restricted to the instances of the decedent being possessed of the real estate at the time of his death." It seems proper to limit the specific remedy to the case mentioned, leaving the purchaser to his action for damages against the executors, when the property, which was the subject of the contract, was out of the possession of the decedent at the time of his death. 2 *Parke & Johns.* 128.

Next as to the jurisdiction. By the 4th section, the District Court has jurisdiction in all cases of proof of contracts of decedents in the same manner as the Orphans' Court. It is very true, as was ruled in *Patterson* v. *Schoyer,* (10 *Watts* 333,) the grant of Chancery powers to an inferior court does not necessarily give appellate jurisdiction to the Supreme Court for the review of cases there decided; and having no express grant of said jurisdiction, it will not be assumed. But in the Act, the District Court has the same powers in relation to the subject matter as the Orphans' Court, from whose decisions an appeal can be taken. And in *Haggerty's case,* it was held that the proceedings of the Court of Common Pleas, upon a petition for leave to prove a parol contract for the sale of land by a decedent may be removed by *certiorari* to the Supreme Court for review. It is

very unlikely that the legislature intended to exempt the District Court from all appeal, thereby making a distinction between them and the Orphans' Court and the Court of Common Pleas, whose decisions may be reviewed by this court. They intended, we believe, to put them on the same footing in this respect as the Orphans' Court and the Court of Common Pleas; and as the decisions of these courts may be reviewed, we see no reason for any difference in this respect between them.

Decree reversed.